I'm here to give you this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Robert E. DeClaro, retired. Please be seated. Call the case, please. Yes, sir. Your Honor, the first case on the docket this morning is 2-23-0214, a plaintiff from the state of Illinois claims to have helped the Daniel P. Perkins defendant's appellee. Arguing on behalf of the appellant, Mr. David S. Friedman. Arguing on behalf of the appellee, Mr. Andrew T. Moore. Thank you, Counsel. You may proceed. Thank you. Good morning, Your Honors. My name is David Friedman. I represent the people of the state of Illinois appellants in this matter. May it please the Court, Counsel. Your Honor, the people are here today asking this Court to reverse the trial court's granting of the defendant's motion to bar audio recordings of conversations between the defendant and a jailhouse informant that contained inculpatory statements of the defendant's desire to have the informant murder his ex-girlfriend, who was a witness against him, in a then-pending criminal case. And to begin, I want to emphasize that there's been no challenge as to the foundation of these recordings. There's been no challenge to the identity of the speakers, and there's no issue as to whose voice is whose. There's no been an allegation of any manipulation or altering of any of the voices. And in short, what that means is that recordings are accurate. They've accurately captured the 19 hours of recordings that this inmate had conversations with the defendant. So, Counsel, the verbiage that, and there are several places in the transcripts and certainly several places in the recordings where there are certain words that can't be heard, are these words such that refer to the actual crime? Or is every? My question probably should be, is every word that you cannot hear or every area where it is a little bit muffled, do those always refer to the crime of solicitation? I don't think we can say that. I don't think that people intend here to use the audio transcripts, which would be the issue in Hunt, to fill in the gaps or to have the informant testify as to he said right here where it's an inaudible portion, I want to hire you, Mr. Johns, to kill my girlfriend. This is not a case where we're trying to fill in or determine what was happening. What we're trying to do here is use the defendant's own words. These recordings are the best evidence of the defendant's intent, plan, whether this is jailhouse bluster or whether this is an actual solicitation of the murder. And there's no question, as the trial court found, and as your honors can hear from listening to the audio, that there are audible portions and that there are inculpatory portions. Inculpatory, audible portions. Inculpatory, audible portions. In Hunt, the trial and the appellate court concluded that the conversations could not be understood. Correct, right. That's not the case here. You can't say that here. And I'd say the case law, including Hunt, shows a clear preference for the admissibility of these conversations. Hunt is the only one, and as your honor just pointed out, those conversations were listened to by the trial court, the appellate court, and the Supreme Court, and everybody concluded that those conversations were indiscernible and completely worthless. When listening to these tapes, I mean, the standard of review, you could say, is abusive discretion. But when we're reviewing these tapes, just as the trial court did, would you submit that it is de novo review? I don't see how it can't be. I mean, it is an abusive discretion. Yes, the case law says it is an abusive discretion. The case law says that. So that's the case law. But it's clear that in all of these cases, the reviewing courts listened to the tapes and decided, yes, the trial court was right, or no, it wasn't. Now, it's impossible or very difficult to use these cases without having actually heard the tapes at issue in those cases. Well, one of the guides that we now have, Hunt, was a 2009 case, correct? Sure, yes. And the Illinois Rules of Evidence went into effect in 2011, right? So we should look at the Illinois Rules of Evidence, shouldn't we? Yes. Neither party here cites to the Illinois Rules of Evidence. Do you know which rules would apply to this situation? I can't say that, Your Honor. Rule 1008 provides that the trial court has to make a determination as to whether or not the evidence of the contents correctly reflects what took place. So the trial court determines whether or not the contents is accurate. Well, I don't think we have that determination here. I mean, if anything, the trial court has made that finding the opposite of that finding, which I would argue is incorrect. The trial court has found here that the entire 19 hours, essentially, are substantially inaudible. Yes, are substantially inaudible, that they're untrustworthy. I don't see how you can make that finding, that these recordings are untrustworthy when you have, when there's no question to their accuracy. Are there inaudible portions? Sure. But can you understand the gist of what the defendant is saying? Of course you can. Illinois Rule of Evidence 1006 also provides that the contents of voluminous writings or recordings that cannot be conveniently examined in the courts may be presented in the form of a summary. That's essentially what happened here, right? The prosecutor went through and edited, took out the objectionable portions that the defendant had identified, and then presented a four-hour recording to the court. Yes. So that would seem to fit in with Illinois Rule of Evidence 1006, would it not? Yes, sir. And I think the fact that, remember, this is initially a defense motion to bar the statements as a whole. And so the parties agreed to the procedure that was engaged to that. There's no point, there's no relevance to putting the whole 19 hours. But the parties, the state errs on the side of caution to alleviate any concern about the completeness or context. So in the response to a defense motion to bar, the state has edited it down to four hours. It's taken out all the prejudicial information, which, as I pointed out in my brief, I don't see how you can have that motion in limine if the recordings themselves are substantially inaudible or untrustworthy. If you can't understand them, how is the defendant able to refer to specific portions that should be redacted? The two motions in limine conflict with themselves. Well, there are portions where they discuss his gang activity. Yes, but those are clearly audible. They're not reprehensible portions of the recording. The remainder of the recordings that have any inaudible portions do not affect the overall trustworthiness or reliability of the recording. The e-stopping statute requires that the recordings be provided to the issuing judge so that the issuing judge can listen and determine whether or not they were within the scope of the order. So there was no objection based on that, correct? There's no objection based on that, and there's been no challenge based on that either. Counsel, what's the definition of abusive discretion? Abusive discretion is when no reasonable person would agree with the proceedings or the rulings of the trial court. Yes, sir. And in every case, do we review the record to make that determination? Yes. Then why is this case any different? Well, I think because this is an abusive discretion, you are reviewing the record, and you are listening to the tapes. I'm going back to your comment about it's got to be de novo review, and my point is, why does it have to be de novo review? I understand the concept that if it's de novo review, we're supposed to be exercising our discretion as opposed to what is typically the case we review the judge's exercise of discretion to determine whether or no reasonable person would agree. So what's the basis of this case that makes it so exceptional that we still don't use the same criteria, which is we look at what the tapes say or don't say, we look at what the judge says, we determine whether or not his findings are against the manifest way to the evidence, and then we determine whether or not his final order or ruling of suppression would be an abusive discretion, i.e. no reasonable person would agree or disagree. So why are you pulling up de novo review and putting us in a position where we're supposed to exercise our collective exercise of discretion? Well, I'm simply asking you to follow the procedures that the courts, the reviewing courts, have done in the prior cases, and in all of the prior cases, the courts have cited, the reviewing courts have said, listen to the trial, have listened to the actual evidence, as Your Honor can do here. Ultimately, then what we're submitting is then having listened to that, that the trial court's conclusion is an abusive discretion. So we're asking you to follow the procedures that were done in the prior cases. We're looking only at the 4-hour. Yes. We're asking you in the ideals of judicial economy in the ultimate final ruling in the case, was it a seeking admission of the 4 hours? And under Rule 1006, the remainder of the reportings can be presented by the defendant if he has an objection. Yes. Or wants a complete presentation. If the defendant wishes to move for completeness and has an argument that the context is somehow misleading here, the defendant can argue, as I pointed out in my brief, for the admission of the entire 19 hours in order to ensure that an accurate portrayal is prevented to the jury. And that's what we're looking for here. The trial is a truth-seeking process. The credibility of the informant here is going to be paramount. And what is the best evidence, removing this evidence from the jury, the fact finder, to determine whether or not John's, whether this is informant bluster, whether this is the informant trying to curry favor with the prosecution in his own case, that's simply a miscarriage here. And that's why we're asking your honors to revert. So in short, you're saying it goes to wait, if nothing else. This is absolutely a wait case. This is not an admissibility as a hunt. And even in Robinson, when they say, are they generally audible, are they not generally audible, as the defense alluded to in his brief, these are generally, the four-hour conversation at this time, are generally audible. There is nothing incomprehensible, untrustworthy, unclear about some of the defendant's statements here, such as, you can save me, I'll make it so fucking worth it ever to have in my life. That offer is going to stand until the day she's got to testify against me on page, that's July 30th, page 58 of the transcript. Was there any contention about the, or any objection to the transcripts, as to whether or not the transcripts that were prepared were? They did not litigate that issue. And if that's an issue, this is solely, we're here solely on the admissibility of these recordings. We're not here on the accuracy or admissibility of the transcripts as presented to the jury. This is about the admissibility of the recordings. If they want to litigate that, that's another step. But we're not there since the recordings have been suppressed. The defense is free to present their own transcript, free to, that's a litigation, that's an issue to be raised. These were the transcripts that were presented to the judge, and the judge looked at during his review of the evidence. So your honors can consider the transcripts as they were presented, as they are exhibits in the case. So briefly, your honors, you can sit and read passages from the four hours of transcripts and that are audio, that demonstrate that these recordings are clear and inculpatory. I mean, I'm not going to do that, but I do want to highlight a few of them that rebut the defendant's contention in their brief, that the state failed to point to anything that's actually inculpatory, or that shows that the defendant was engaged in a plan to solicit the murder of his ex-girlfriend. You have the defendants discussing the addresses. On page 57 of the transcripts, 3151, you have the defendant and the informant reciting the addresses. And that says, the informant says, that's a lot of fucking addresses. Defendant, you got them all. Informant, okay, we got it. Defendant, let's do it again. Informant, okay, we got it. And then he rolls through all the addresses. The defendant's mom, and then they say the most famous address, and that's the victim's address. Why else are they referring to the victim's address if not to have the defendant provide any information with which to commit the murder? You have the timing. Five o'clock in the morning. Five o'clock in the morning. You have the defendant and the informant discussing how to remove plates, what vehicle to use, how to obtain a vehicle, what gun to use, a .357 versus a six-shooter, how to muffle the sound with a potato. I could do this all day, but my point is that we have $20,000. Man, what would I do with $20,000? Here's the defendant. Uninterrupted, I just hope you can show some appreciation for what I'm going to do for you. That's page 53 of the transcript. Page 55, 2814. Defendant, I hope it really happens. Informant, oh, I know. A matter of days, dude, a matter of days. And the recordings show the plan. You don't have the very first solicitation because it began before the informant comes, but what you have here is circumstantial evidence of the defendant's intent, plan, desire to see the witness murdered. And I don't see how a defendant's argument that the there's been no challenge that the recordings are irrelevant. There's been no challenge that the recordings are cumulative. And we've already addressed any of the prejudicial. In fact, of course this is prejudicial. If these were indiscernible and worthless recordings, we wouldn't be here. I mean, the defendant would make a motion. The state would be seeking to move this in, and we'd be having an argument on the reverse. So your honors, I simply just disagree with the defendant's characterization of the recordings that issue in total. Counsel, you filed a motion to cite additional authority, did you not? I don't believe that I did. So I'm going to – I don't want to say that I didn't, but I don't think I did. Okay. Thank you. I also just – a few more that I wish to point out. That this is not a – on page 13 of the transcript, the informant says, How many nights do you think we set up talking about this shit? Defendant, clearly audible. Every night. I think we've mentioned it like every night. Well, not the first couple. Once we realize we have something to offer each other, I'd say. In short, your honors, the transcripts here are relevant. The issue here is one of weight, not one of admissibility, and we ask your honors to reverse the trial court's ruling barring their admission. Any other questions? No, I have none. Thank you. Thank you. Thank you. You'll have an opportunity to make the buffeting. Mr. Moore, you may proceed. Good morning, your honors, and may it please the court. My name is Andrew Moore, and I'm here representing Daniel Perkins. The less information you have, the more likely you'll reach a wrong conclusion. Could you speak up a little bit? Yes, I can. An example of that is Mr. Perkins has been very active since beginning his time in IDOC back in 2015. He's a devout Christian, and in 2002 he attained his college degree through the Universities Without Walls program put on by Northeastern Illinois University. He's now an advisor with their think tank because they were impressed with him, and as you can see, many of the students and staff from that program are here, and he also has family and friends in support. Let me stop you right there. I think that is commendable, what he's done while he is in prison. I do, and I'm not belittling that at all. But isn't the question before us whether the inaudibility is so substantial that it renders recordings untrustworthy as a whole? Yes, that is right. That's the issue. That's the issue, and the point is that you guys don't have all the information that Judge Pilmer did. Going to this strange idea of how this is somehow de novo review. Well, you know, what you're saying right now makes a good argument for de novo review. No, Your Honor, this judge, Judge Pilmer, the state doesn't mention this, but he's presided over this case since 2014. Absolutely. He's seen the one person in the world that the state could have called and should have called at this hearing to make up for these inaudible portions. He knows this person's credibility. You all do not know this person's credibility. This person testified specifically to this alleged plot in that trial. That's not in this record. Well, the tapes were not played in that trial. Right? They were not. I'd rather it was just his testimony. Well, if you've read that record, then you know that he testified that there was no money that was going to exchange hands, that any reference to construction referred to Mr. Perkins' construction business. So that directly contradicts what the state is saying. But let me go back, and I know not everybody agrees with this, and we have this same issue when you're looking at a video as a reviewing court. Do we look at it de novo, or do we look at it for an abuse of discretion? I'm not going to tell you which way I think that we should look at it, but, again, if we look at the issue here in this court, the only question before us today is whether or not this is substantially untrustworthy. Correct. That's the only thing we're looking at. The only thing we're looking at is that transcript. So what is trustworthy? So tell me how it is. Black's Law Dictionary defines trustworthy as reliable, dependable, and deserving of confidence. Trustworthiness doesn't go to the foundation. Trustworthiness goes also to the person, the confidential informant, who has a wire that can easily manipulate it to cover up anything he wants, and clearly there's more inaudible portions of this audio than there are audible portions. At any point in this 19 hours, he could have said, for instance, oh, okay, let's just, you know, pass the time.  Let's just screw around and make some stuff up. How do you respond to the State's argument that the defense was able to listen to the defendant's admissions to other crimes that were never investigated or prosecuted, as well as his association with gang members and also his prior periods of incarceration? Those are all clearly audible. Yeah, there's a lot of parts in this that are audible, but there's more parts that aren't audible, and that's what is important here, because it's whether or not the inaudible portions make the conversation as a whole untrustworthy. And the fact that the State is whittling this down and down and down and down, that doesn't make it better. In People v. Hunt, the Supreme Court noted that both the trial court and the public court listened to the recording and found them to be substantially inaudible and concluded that the recorded conversation could not be understood. Hunt was decided before the new rules of evidence went into effect. They're no longer new, but since 2011. Right, but Hunt, in that case, if you read Hunt, that audio was not inaudible. That audio, the defendant has heard telling a unique, specific kind of gun that was used in the murder, and he heard saying who was at the scene. That information is more than what we have in this audio. In 19 hours, which the State has eliminated, 15 hours of inaudible portions of it. The State has also eliminated conversations that related to other matters. Yeah, which the State has to do. Yeah, which the State has to do, but take that out, which is clearly inadmissible. You're left with, well, at the start, it was nine hours. The State said, okay, we've got nine hours. Judge Pilmer reviewed that. And remember, this is after he's heard Robbie Johns testify under oath that he never, there was never going to be any money exchange, any talk of construction had to do with the construction business. That goes to the credibility of that witness, correct? That's the only witness in the whole world that can testify to what the inaudible portions of this tape are. The Supreme Court had handed down a case, People v. Manning, after the Hunt case. And in that case, they said that the gaps, the inaudible portions, those all go to weight, which your opponent indicated this morning that, yeah, that goes to the weight. So you let the tape in, and it's for the trial effect to determine what weight, if any, they should give to that. Why should we disregard the direction in Manning? Your Honor, Manning is not particularly applicable here because the State there did what they should have done, which is call the witness to testify to, one, why it was inaudible, and, two, what was said during those portions of inaudibility. We don't have that here. We have dozens of hours of inaudible audio with no account, nothing in the record to suggest what's said. How can that be a reliable audio? The touchstone here seems to be the word untrustworthy or trustworthy. And when you are shooting a gun, you're usually shooting at something you want to hit. You're not just shooting it up in the air and wasting ammunition. So can you tell me what the word untrustworthy relates to? The word untrustworthy, in this context of partially inaudible sound recordings, has to do with whether or not it's reliable. And reliability has to do with, you know, what... Is there corroboration, right? Is there corroboration for what is being said? There's not here in that conversation. If you look at the conversation, the addresses that are provided... We don't know whose addresses those are. The State has not entered any evidence to suggest that any of those addresses are the KO, the supposed victim here. There's no evidence that those addresses are hers. He provides the addresses. The defendant provides the addresses. But how do we know that those addresses are for her? Do you think that any time a defendant passes an address to a fellow inmate that he's wanting somebody to kill them? No. Maybe they're doing other things illegal. Who knows? That doesn't mean here that he's hiring this person to kill her, which that person testified in transcripts that the State did not provide you, that there was no money that was going to be exchanged hands. You're arguing the answer that I was looking for, which is relevance and materiality. You said reliability. It's nice to have testimony that's reliable that you can, quote-unquote, have confidence in and assign weight to. But if something isn't relevant or material, the weight doesn't mean anything. Correct. And the courts have determined that when audio is substantially inaudible, then it is inadmissible. It doesn't go to the weight. Because the relevance of partially inaudible, the court said in Hunt, and again, the inaudible portions have to be so substantial that the recorded conversations could not be understood. But understood, what does that mean here? Is it just, oh, we can put any conversation? Are the excerpts that counsel for the State just read, are those? Those are totally out of context of anything. We don't know what's surrounding them. The State has created an audio where we don't know where any of these cuts are. We don't know how much audio has been taken out where. We don't know anything. Under the Illinois Rules of Relevance 1006, the defendant will be provided the opportunity to have the full recording played within the discretion of the defendant. That rule doesn't have anything to do with reliability or inaudibility. It permits the State, when recordings cannot be conveniently examined in a court, they may be presented in the form of a chart, a summary, or a calculation. Isn't what the State has done is creating a summary of the incriminating statements that are audible in that? For a summary of this to be accurate, we need to know time stamps of what's been taken out. What if, for instance, this is just kind of a visual example. Let me ask you something real quickly. Did you argue that down below or is the argument that you have only audibility, the audible portions? I'm not sure what you mean by that. My question is, again, I indicated we are here today to determine whether or not these are audible. That was the only issue. It's not just whether or not they're audible. It's whether or not they're reliable. Reliable and audible, but down below, did you talk about the portions that were new? Because it kind of seemed collegial to me down below when the tapes were handed over to the judge. The State kind of went about this in a really weird way. So the defense submitted two motions in limine. The first one was, if you're going to admit this audio, this stuff has to be removed. And they gave them a very short list. Right, and they removed it. Correct. That motion in limine was never ruled upon. So then the State presented a nine-hour tape. And that was supposed to be the tape that was talked about at the hearing. At that hearing, the State said, oh, we've still been working. We've got a six-hour tape. So then they went and litigated that. That was dismissed. Now we have a four-hour tape. What the State's never done, besides further funneling down the inaudible portions of this, they've never put any evidence into the record to say what any of this stuff means. Like they could have put in the record, oh, this is the supposed victim's address. But, again, doesn't that go to wait? Isn't that something you, as a defense, argue at trial as to the reliability of these tapes? Like, ladies and gentlemen, you heard nothing about whose address this is. But the issue before us, as I said when we first started here, when we first walked up to the podium, I told you and asked you, is this not the issue? And you indicated, well, yeah, maybe it is. But, again, you wanted to tell us what a great citizen he was. And, again, I commend him for that. However, that is not what's before us today. Your Honor, what's before us today was litigated in People v. Hunt. And in that case, the State did exactly what they did here. They put on partially inaudible sound recordings with nothing else, just the recordings. On those recordings, the defendant is heard talking about the gun that was used and who was there. That's evidence that, as you're saying, it should go to the wait, right? But Hunt said, no, that's not how this works. If it's unreliable, it's not admissible. It doesn't matter about whether it's relevant. If the State wants to enter in specific portions of this audio for other reasons, maybe they can litigate that down the line. But for this instance, we're looking at the entire audio that they've submitted, taking into account what's inaudible, which is at least 14 hours out of 19 hours. And we have to determine whether or not anything could have happened in that inaudibility that could change how you look at this. And, you know, it depends on how much information you have. Like I said, Judge Pilmer in this case, I don't understand how you could not give this judge deference when he has presided over the preceding case. He knows this person's credibility. You all have no idea what that is. The State apparently has an idea because they didn't call him to make evidence. That's not for us to judge credibility at this. That's why it's an abuse of discretion. That's right. So, and on top of that, he listened to this audio three times. Not every judge would have done that. It just doesn't make sense. He's the best person to make this decision, and he made it. And for his courtroom, that's the decision that he made. And if I could just conclude. Any other questions? No. Thank you. You can conclude. Oh, okay. This judge listened to these recordings in their entirety three times. He presided over Dan's bench trial. That's another thing I didn't mention. It was a bench trial, so he was the trier of fact in this alleged scheme. He's not in. The State hasn't entered anything in the evidence to attempt to explain the unintelligible portions of this audio. Here the judge applied Hunt to exclude this as incomprehensible, and this Court must affirm. Counsel, I have a question. Yes. Based upon your closing. You said that the other case, or this case, was a bench trial. And if that's the case, that he could still admit this in evidence and then determine in the process of giving it the appropriate weight to decide that he's not going to rely on it? We don't know that this upcoming trial is a bench trial. The previous one was. Well, does the State have the right to a jury trial? The point is that it's the defendant who has the right to a jury trial. Right. And he might elect a jury trial in this upcoming case. He can waive jury any time before they're in panel, and probably even maybe after that. The point is that it would appear that we're arguing an issue that may become moot if it's tried by the same judge at the same bench trial. Am I correct or incorrect? I don't know exactly if you're correct or incorrect, but if that's the case, well, if it's a bench trial, he's the trier of fact, is he not? Correct. I don't know the case law well enough to know whether or not the trier of fact can, without the parties bringing it to them, pull in information from other cases to use in that case. I don't know if that's appropriate. Do you know what I'm saying? Well, I think Justice McLaren's point is that the defendant could waive. This is hypothetical, and if it was Judge Comer, Judge Comer will apply the weight if we were to disagree with your proposition. And require him to consider it. He could consider it and decide that he doesn't like it. He could, but we don't know what's going to happen down the road, and we're typed up litigating this issue. Thank you. You may proceed with your vote, sir. Thank you. Counsel started with the more information you have, the less information you have, the more you don't know, something to that effect, and I think this is the information that the jury needs. The jury needs these recordings because this is the best evidence of his intent, of the defendant's intent. Is there a case law that relates to the totality or the necessity for totality regarding a conversation that's recorded like this? Does it require that the conversation cover all the bases, so to speak, or may the conversation, especially if it's done at different times, cover different bases? I think that you're asking if the conversation can cover different bases. Are you asking if the conversation has to be completely intelligible in each section that the state is seeking to admit? I apologize. I'm asking your view of, because the argument has implied that the conversation at worst needs to talk about some element of the crime in order to be trustworthy and relevant and reliable, and these were, I believe, a compendium of four different conversations. Is that not correct? Yes, this is a summary, as Justice Brickett pointed out. This is a summary of the entire 19 hours of audio, and I disagree with counsel's argument that there's no idea what the state removed or how the state removed it. Both parties have the full 19 hours. Both parties know exactly what was removed and can compare the 4-hour version with the 19-hour version. So I don't understand counsel's suggestion that the state has made up, altered, or manipulated the tapes in some way. Did they make that argument down below? No, that's not an issue here. The parties agreed to remove. I don't understand how the first 10 hours that were redacted have any relevance to this whatsoever when both parties agreed to redact it. But if the defendant wants to have 19 straight hours played for completeness sake and so to ensure that there's nothing misleading about these recordings, then they can make that motion. I see no relevance to it at all if we're talking about relevance. Then that has zero relevance, but for completeness sake and for the defendant's sake, if he wants to do that, he can make that motion. Can you? I'm sorry. Go ahead, Justice Brickett. Again, I raised this earlier. Neither party discusses the Illinois Rules of Evidence as they apply to this case. But shouldn't the rules inform our analysis? For example, Illinois Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury by consideration of undue delay, waste of time, needless presentation, or cumulative evidence. Do any of those conditions preclude the admissibility here? I don't believe 403 does at all. Although shouldn't 403 inform any type of evidence? What it boils right down to is the defendant is arguing this is prejudicial because you can't hear all of the conversation. This is a prejudicial presentation because the state has edited out the rest of the conversation. So address that. Is that so prejudicial that it should result in the exclusion of the evidence? No, there's nothing prejudicial. And I don't believe that's actually his argument. I believe he's arguing that it's so substantial that we can't understand it. I don't think he's made any argument that this is irrelevant or that the actual substance of the conversations are irrelevant. I mean, there's been no 403 challenge. As I pointed out in my opening, there's been no challenge to the relevancy of this. The only challenge is that you can't understand it such that the statements by the defendant himself are unreliable or untrustworthy. I say I'm right, it is untrustworthy. And that's just not the case here. This isn't a case where, as I said in the beginning, we're not filling in inaudible gaps with the credibility of the informant. We are saying this is what happened in 19 hours. The suppression of this will frustrate. This is the end of jail informants. This is suppression. The case here, the import here, is that we need to have a clear guidance as to what the prosecutor and what jailhouse informants are allowed to do. We can't have the informants say, well, I'm not going to worry that this case is out there. I have to stand next to him. I have to get him to speak into my chest. That's an absurd counsel. How does the quality of the recording have anything to do with what the informant is supposedly doing? Well, if the informant had worn the wire because it's half empty, well, if the informant had worn the wire and you couldn't understand it a la Hunt, then it's out. And that's unfortunate, but that's the nature of what happens. But here we don't have that. We don't have that. And I want to briefly, may I briefly concede, I do want to say one thing, that what happened in the other case, and Judge Pomer and the credibility of the informant in the other case, it's completely irrelevant here. That is going to be my question to you. What is the relevance?   Your honors are here to review the audibility of this case. Whatever that informant said at that trial, well, he's going to be on the stand again, and he's going to testify to the same things as credibility. He can be impeached with the prior testimony. He can be cross-examined. But that trial and the judge's history of the case, completely irrelevant to this procedure. But we had two different judges hearing the cases. So one judge heard the one case, and they found the guy not credible. Then you get another. This case, those are different judge. Does that judge have to go back and look at that and judge the credibility of that witness? I believe that since the witness is going to testify, anything he testified to inconsistently is going to be subject for cross-examination through the transcripts. So Jeff Fulmer's history of the case, totally irrelevant. The informant's credibility in another case, or what he said or what he testified to, completely irrelevant. The testimony of the jailhouse informant, the Supreme Court has said must be viewed with caution, even though there's no jury instruction to be given. Shouldn't we review the proposed testimony with caution? And in other words, you know, if the state were to call the informant without the recording, his testimony must be viewed with caution. That's it. I mean, not only because he had prior criminal convictions, but he's probably incurred a plea deal with the state. Of course, he did incur a plea deal. So, but that's an issue for trial. This is an issue of admissibility, and this is an issue of weight, not admissibility. Allow the jury to hear the defendant's own words and his own statements to the informant, and allow the jury to judge the credibility of the informant, as well as the credibility of the defendant in his own statements. So, Your Honor, we are asking you to reverse the ruling of the trial court and amend the case for the proceedings. Are there any other questions? Thank you. We will take the case under advisement. There are other cases on the call, courts in recess. All rise.